**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donko Buzancic, | No. CV-09-1595-PHX-GMS (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Katrina Kane, in her official capacity as Field Office Director; Janet A Napolitano, in her official capacity as Secretary of the U.S. Department of Homeland Security; Eric Himpton Holder, Jr., in his official capacity as Attorney General of the United States; Jim Macdonald, in his official capacity as Warden of Florence Correctional Center, | |
| Defendants. | |

On August 3, 2009, Petitioner Donko Buzancic ("Petitioner") filed a petition for writ of habeas corpus releasing him from custody pursuant to 28 U.S.C. § 2241, alleging that Immigration and Customs Enforcement's ("ICE") indefinite detention of a refugee who has not acquired permanent resident status within one year of entry violates the Constitution and Immigration and Nationality Act ("INA"). (Doc. 1). The petition was referred to United States Magistrate Judge Michelle H. Burns for report and recommendation ("R & R"). (Doc. 5). Judge Burns recommended that the Court dismiss the petition as moot because the Petitioner's petition for adjustment of status was granted and the record indicates that he has

been released unconditionally. (Doc. 46). Moreover, "none of the narrow exceptions to the mootness doctrine apply to his case." (*Id.*).

## BACKGROUND

Petitioner, a native of Bosnia, was admitted to the United States as a refugee in April 1994. (Doc. 1). In February 2009, ICE took him into custody at Florence Correctional Center in Florence, Arizona pursuant to 8 U.S.C. § 1159 for failure to adjust his status to that of a lawful permanent resident within one year of his entry. At the time Petitioner filed the writ of habeas corpus, he had been in custody for approximately six months and was requesting immediate release. Petitioner argued that ICE was interpreting § 1159(a) to authorize the indefinite detention of a refugee who has not acquired permanent resident status without the necessity of charging the refugee with a civil or criminal offense. Petitioner requested declaratory relief, asserting that his indefinite detention is unconstitutional and violates the INA, and his immediate release from custody. Petitioner only requested relief for himself, not for any other similarly situated persons.

After filing his writ of habeas corpus, Petitioner submitted his I-485 Application for Adjustment of Status and I-602 Application by Refugee for Waiver of Grounds of Excludability. On December 8, 2009, USCIS granted his petition for adjustment of status and released him from detention. (Doc. 32, Ex. 4; Doc. 45). Further, on December 9, 2009, the immigration court dismissed Petitioner's Notice to Appear. (Doc. 45, Ex. 4). In September 2010, after discovering that Petitioner had been released "unconditionally, with proceedings terminated", Judge Burns issued an Order to Show Cause why the action should not be considered moot. (Doc. 42, 46). Subsequently, Judge Burns issued an R & R, concluding that the petition be denied as moot. (Doc. 46).

## STANDARD OF REVIEW

Federal district courts "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].'" *United States v. Reyna-Tapia*, 328 F.3d 1114, 1119 (9th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)); *Carrillo-Lozano v. Stolc*, 669 F.Supp.2d 1074, 1076 (D.Ariz. 2009). Under § 636(b)(1) a "district judge must review

the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *Reyna-Tapia*, 328 F.3d at 1121.

## DISCUSSION

The facts and legal arguments presented in this case largely mirror those presented in *Alizadeh v. Kane*, 2010 WL 5146743 (D. Ariz. Dec. 13, 2010) and, in particular, *Buzancic v. Kane*, 2011 WL 336395 (D. Ariz. Jan. 31, 2011). As the Court explained in *Alizadeh*, "[h]istorically, the function of the writ [of habeas corpus] is to secure immediate release from illegal physical custody." 2010 WL 5146743, at *1 (quoting *Picrin-Peron v. Rison*, 930 F.2d 773, 775 (9th Cir. 1991) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973), *overruled by Stone v. Powell*, 428 U.S. 465 (1976))). Under certain circumstances, a petitioner who has been released may nevertheless meet the "case or controversy" requirement by establishing that an exception to mootness applies. *See, e.g., Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005). Here, Petitioner has been released unconditionally, his petition for adjustment of status was granted and all further proceedings have been terminated. Petitioner nevertheless contends that his petition is not moot because the "voluntary cessation" and "capable of repetition" exceptions apply. (Doc. 47).

**I. Capable of Repetition**

Petitioner first argues that the "capable of repetition" exception applies to this case even though he concedes that "he is unlikely to be detained under § 1159 in the future."[1] (*Id.*). As in *Alizadeh*, Petitioner here argues that the "capable of repetition" need not be limited "to cases in which the same party must again be subject to the same action." (*Id.*).

---

[1] Although Petitioner for some reason solely refers to the "existence of a final order of removal", both Judge Duncan (Doc. 40) and Judge Burns (Doc. 46) have noted that Petitioner has been released unconditionally. Moreover, the record shows that Petitioner's request for an adjustment of status to that of a lawful permanent resident has been granted (Doc. 32, Ex. 4) and that proceedings were terminated and the Notice to Appear ("NTA") was dismissed (Doc. 45, Ex. 4). The Court assumes that Petitioner's failure to mention his adjustment of status and the termination of proceedings following the order of removal is simply an oversight.

- 3 -

However, the Supreme Court generally has held otherwise. "'[I]n the absence of a class action,'" the "capable of repetition" exception is limited to the situation where the following two elements are met: "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Petitioner essentially concedes that he cannot establish the second element of the exception, and therefore, the Court need not address the first element.

Petitioner relies on *United States v. Brandau*, 578 F.3d 1064 (9th Cir. 2009), and *United States v. Howard*, 480 F.3d 1005 (9th Cir. 2007), for his argument that he need not bring a class action to argue the rights of "similarly-situated persons." (Doc. 47). However, in both of those cases, there was evidence that strongly suggested that the respective policies were ongoing. The Ninth Circuit's discussion of this exception in *Brandau* was based on information "that strongly suggest[ed]" that the policy of fully shackling defendants at their initial court appearances was ongoing, including statements made by government counsel confirming the status of the policy. 578 F.3d at 1068.

In this case, the Field Office Director of ICE in Arizona issued a guidance memorandum in November 2009, clarifying the policy on detaining refugees pursuant to 8 U.S.C. § 1159. The memorandum explains that "in the absence of emergency or other extraordinary circumstances, a determination *must be made within 48 hours* whether or not to release such aliens (and if so, under what conditions), and whether to place them in removal proceedings." (Doc. 45, Ex. 1 (emphasis added)). Moreover, the new policy provides that determinations concerning the detention of an unadjusted refugee must be made in accordance with statutes indisputably authorizing such detention. Any NTA must be served within 72 hours from the time the unadjusted refugee enters Field Office Custody. In May 2010, the United States Department of Homeland Security issued a memorandum further clarifying for field offices the issue of the detention of refugees who have failed to adjust to lawful permanent resident status. (Doc. 45, Ex. 2). In that memorandum, the

1 government makes clear that a person may not be detained simply for failure to adjust status. 2 However, as the government argues in this case, the memorandum states that ICE "may 3 charge a refugee with removability . . . if one or more grounds apply even if the individual's 4 refugee status has not been terminated." (*Id.*). The memorandum explains that this may 5 occur, for instance, in cases of fraud or a criminal conviction.[2]

6 Petitioner argues that despite these guidance memoranda, refugees are still being 7 indefinitely detained pursuant to § 1159. (Doc. 47). Petitioner attempts to establish this 8 ongoing policy through a declaration of a Florence Immigrant & Refugee Rights Project 9 attorney, which Petitioner filed with his Objection to the R & R. (Doc. 47, Ex. 1). Petitioner 10 has not, however, provided any admissible evidence to support the assertions made in that 11 declaration. Florence attorney, Brian Wolf, describes his observations and makes vague 12 references to some cases he is familiar with involving unadjusted refugees, but the 13 declaration fails to describe specific examples of the government's failure to adhere to its 14 own policy or support those assertions with admissible evidence. In fact, Mr. Wolf does 15 appear to state that ICE is timely issuing NTA's to the refugees taken into custody, which 16 is consistent with the above-referenced memoranda. As Judge Burns noted, Petitioner's 17 remaining supporting documents all pre-date the memoranda, and therefore, fail to establish 18 an ongoing policy of indefinite detention pursuant to §1159. Without more, the Court cannot 19 conclude that the record before it "strongly suggests" that the policy of indefinite detention 20 is ongoing.

21 Similarly, in *Howard*, the defendants were "challenging an ongoing government 22 policy." 480 F.3d at 1010 (citing *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1118 (9th Cir. 23 2003)). The Court in *Buzancic* also distinguished *Howard*, stating "the defendants in *Howard*

---

[2] The memorandum further states that a field office "may make a determination to issue an NTA to any unadjusted refugee for whom it believes there is prima facie evidence of inadmissibility under INA § 212(a) or deportability under INA §237(a), regardless of whether the individual's refugee status has been terminated and even if USCIS has not yet considered the refugee's adjustment application." (Doc. 45, Ex. 2).

- 5 -

sought 'to represent interests broader than their own[.]' Petitioner, by contrast has sought only *his* immediate release from custody." 2011 WL 336395, at *2 (internal citation omitted). The same distinction may be made here. Although Petitioner now attempts to "represent interests broader than his own", (Doc. 47), he failed to make this argument in his petition, (Doc. 1). Therefore, the Court will not consider that argument here.

**II. Voluntary Cessation**

As the Court explained in *Alizadeh*, "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" 2010 WL 5146743, at * 2 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). In such a case, defendant typically bears a "heavy burden" of demonstrating that the challenged conduct cannot reasonably be expected to recur. *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189). The Ninth Circuit, nevertheless, recently reiterated that "where there is 'no reasonable . . . expectation that the alleged violation will recur,' and where 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation,' the case is moot." *Am. Cargo Transp., Inc. v. U.S.*, 2010 WL 4367040, at *2 (9th Cir. Nov. 5, 2010) (quoting *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)).

The Court agrees with Judge Burns' determination that the Respondents have met their burden of demonstrating that the challenged conduct cannot be expected to recur. In the R & R, Judge Burns notes "[s]ince the record indicates that the United States Citizenship and Immigration Service granted Petitioner's petition for adjustment of status and demonstrates that he has been released unconditionally, with proceedings terminated, his contention [that the violation will recur] is inapplicable to him personally." (Doc. 46). *Cf. Clark v. Martinez*, 543 U.S. 371, 376 n.3 (2005) (concluding that the case continued to present a live case or controversy because petitioner's release was "not only limited to one year, but [was also] subject to the Secretary's discretionary authority to terminate"); *Rodriguez v. Hayes*, 591 F.3d 1105, 1117–18 (9th Cir. 2010) (determining that petitioner's claim was not moot because his release from detention may be revoked at the discretion of the Commissioner and

1 is subject to a number of restrictions).

2 Moreover, as stated above, the guidance memoranda issued in November 2009 and 3 May 2010 demonstrate that the government has changed its policy and will no longer detain 4 refugees simply for failure to adjust status. Respondents have also provided a declaration by 5 Katrina Kane, the Field Office Director for the Phoenix Field Office, setting forth the efforts 6 that her office has made to implement the new policy. (Doc. 45, Ex. 3). As the Court stated 7 in *Alizadeh*, although "there is always the possibility of bad faith and a change of heart", the 8 Court must "presume the government is acting in good faith." 2010 WL 5146743, at *2 9 (citing *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010)). 10 Accordingly, the Court determines that Respondents have met their burden.

11 **III. Respondents' conduct**

12 Petitioner asserts that Judge Burns erred in determining that Respondents complied 13 with the November 2009 guidance memorandum in the case of *Banjeglavic v. Kane*, CV-09-14 2523-PHX-NVW (ECV), even though Banjeglavic was not released until almost a month 15 after the memorandum was issued. (Doc. 47). Petitioner also notes that in *Gelee v. Kane*, CV-16 10-0388-PHX-PGR (MHB), that petitioner was detained for over two weeks before he was 17 placed in removal proceedings. This identical argument was rejected in *Buzancic*, 2011 WL 18 336395, at *3. In that case, the Court reasoned that both examples predate the guidance 19 memorandum issued by Executive Director James Chaparro in May 2010. Because that 20 petitioner had not presented evidence of Respondents' failure to adhere to the national policy, 21 that is, there was no admissible evidence of violations after May 2010, the Court concluded 22 that Judge Burns had not erred.

23 This Court noted in *Alizadeh* that although ICE did not make a determination whether 24 to release Banjeglavic until three weeks after the issuance of the November 2009 guidance 25 memorandum, the Court must assume that the government was acting in good faith with 26 regard to its policy. 2010 WL 5146743, at *2. The fact that it may have taken the government 27 several weeks to review every file of every detained person following the issuance of the 28 memorandum does not, in itself, suggest that the government has failed to implement the new

policy. As to Gelee, however, the case is a bit closer because the petitioner was detained several months after the issuance of the November 2009 memorandum, but before the national memorandum was issued. However, it is not clear from the record that Gelee was actually detained for more than 72 hours before being detained under 8 U.S.C. § 1226. (Doc. 38).[3] Moreover, Petitioner has not presented any other admissible evidence of refugees detained in violation of either guidance memorandum. Accordingly, the Court concludes that Judge Burns did not err in her conclusions.

**IT IS ORDERED:**

1. Magistrate Judge Burns' R & R (Doc. 46) is **ACCEPTED.**

2. Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **DISMISSED.**

3. The Clerk of the Court shall **TERMINATE** this action.

DATED this 11th day of May, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge

---

[3] There is also some debate between the parties as to when Gelee was served with an NTA. *See* Doc. 36; 38; 47.